

FILED & ENTERED

FEB 02 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:  Aida Fuentes,<br>         Debtor. | Case No.: 2:13-bk-11518-ER<br>Chapter:  7<br><br>**MEMORANDUM OF DECISION (1) GRANTING TRUSTEE'S SALE MOTION AND (2) DISMISSING ADVERSARY PROCEEDING**<br><br>Date:     January 31, 2018<br>Time:    10:00 a.m.<br>Location: Courtroom 1568<br>              Roybal Federal Building<br>              255 East Temple Street<br>              Los Angeles, CA 90012 |

## I. Introduction and Background

David M. Goodrich, the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Aida Fuentes ("Aida") [1] seeks authorization to sell his right, title, and interest in residential real property located at 16335 East Elgenia Street, Covina, CA (the "Property"), on an as-is basis, without any warranties or representations. The proposed buyer is Equity Saver Construction, Inc. ("Equity"), and the sale is subject to overbids.

The Trustee also seeks dismissal of certain of the claims for relief asserted by Rudy Fuentes ("Rudy") in the adversary proceeding *Fuentes v. Goodrich*, Adv. No. 2:17-ap-01475-ER. In the adversary proceeding, Rudy asserts that he holds equitable and possessory interests in the Property. Rudy opposes dismissal of the adversary proceeding, and contends that any sale of the Property must be postponed until adjudication of the adversary proceeding has been completed.

---

[1] Given names are used to distinguish Aida Fuentes from her spouse, Rudy Fuentes. No disrespect is intended.

On January 31, 2018, at 10:00 a.m., the Court conducted a hearing on the Trustee's motions to (1) sell the Property (the "Second Sale Motion") and (2) to dismiss certain of the claims asserted by Rudy in the adversary proceeding (the "Motion to Dismiss").[2] The Court overruled Rudy's assertion that the pending adversary proceeding required that the sale be postponed, and proceeded with the sale. No overbidders appeared to bid on the Property. The Court confirmed the sale to Equity for the purchase price of $360,000.

This Memorandum of Decision sets forth the Court's reasons for (1) granting the Second Sale Motion and (2) granting the Motion to Dismiss. Having granted the Second Sale Motion, the Court further finds that it has no jurisdiction over the remaining claims in the adversary proceeding. Accordingly, the Court will *sua sponte* dismiss the remaining claims.[3]

## A. Prior Proceedings

In 2002, Aida owned the Property as her sole and separate property. In July 2006, Aida married Rudy. On September 12, 2011, Aida recorded a grant deed conveying all of her right, title, and interest in the Property to Rudy as his sole and separate property.

Aida commenced a voluntary Chapter 7 petition on January 18, 2013. David M. Goodrich was appointed as the Trustee.[4] On March 12, 2014, the Trustee commenced an adversary

---

[2] The Court considered the following pleadings and papers in adjudicating these matters:
1) Second Sale Motion (filed in Case No. 2:13-bk-11518-ER):
   a) Motion of Trustee for Order: (1) Authorizing Sale of Real Property Free and Clear of Liens and Encumbrances; (2) Approving Overbid Procedures; (3) Authorizing Payment of Any Undisputed Liens, Costs of Sale, and Property Taxes; and (4) Finding that Purchaser is Good Faith Purchaser Under 11 U.S.C. §363(m) (the "Second Sale Motion") [Doc. No. 95]
      i) Notice of [Sale Motion] [Doc. No. 96]
      ii) Order Continuing Hearing on Trustee's Sale Motion from January 24, 2018 at 11:00 a.m. to January 31, 2018 at 10:00 a.m. [Doc. No. 101]
         (1) Notice of Continuance of Hearing Per Order Continuing Hearing on Trustee's Sale Motion from January 24, 2018 at 11:00 a.m. to January 31, 2018 at 10:00 a.m. [Doc. No. 103]
         (2) Notice of Sale of Estate Property [Doc. No. 104]
   b) Plaintiff Rudy Fuentes' Opposition to Second Motion to Sell Residence (the "Opposition") [Doc. No. 100]
   c) Trustee's Reply to Opposition of Rudy E. Fuentes to [Sale Motion] (the "Reply") [Doc. No. 105]
2) Motion to Dismiss (filed in Adv. No. 2:17-ap-01475-ER):
   a) First Amended Complaint For: (1) Declaratory Judgment to Determine the Validity and Value of Debtor's Possessory, Equitable, and Homestead Interest in Real Property; and (2) Injunctive Relief (the "Complaint") [Doc. No. 16]
   b) Notice of Motion and Motion of Defendant, David M. Goodrich, Chapter 7 Trustee of Estate of Aida Fuentes, to Dismiss with Prejudice First Amended Complaint to the Extent that Plaintiff Alleges a Claim, and Seeks an Adjudication and Relief, Re Equitable Interest in Real Property Based Upon Alleged Use of Community Funds (the "Motion to Dismiss") [Doc. No. 32]
   c) Opposition to Trustee Goodrich's Successive Motion to Dismiss (the "Opposition") [Doc. No. 34]
   d) Reply of Defendant, David M. Goodrich, Chapter 7 Trustee of Estate of Aida Fuentes, to Dismiss with Prejudice First Amended Complaint to the Extent that Plaintiff Alleges a Claim, and Seeks an Adjudication and Relief, Re Equitable Interest in Real Property Based Upon Alleged Use of Community Funds (the "Reply") [Doc. No. 37].

[3] This Memorandum of Decision will be docketed in Aida's bankruptcy case, Case No. 2:13-bk-11518-ER, and in the adversary proceeding brought in Rudy's bankruptcy case, Adv. No. 2:17-ap-01475-ER. Except for the different captions reflecting the different case numbers, the Memoranda of Decision entered in each case is identical.

[4] As discussed in greater detail below, Sam S. Leslie was appointed as the Chapter 7 Trustee for the bankruptcy estate of Rudy Fuentes. Trustee Leslie has not filed any papers in connection with these motions. Unless otherwise indicated, all references to the "Trustee" are to David M. Goodrich, the Trustee of Aida Fuentes' bankruptcy estate.

proceeding against Rudy and Aida, seeking to avoid the September 2011 transfer of the Property as actually and constructively fraudulent. *See Goodrich v. Fuentes, et al.*, Adv. No. 2:14-ap-01159-ER. On April 30, 2015, the Court entered judgment in favor of the Trustee and against Rudy, and avoided the September 2011 transfer.[5] With respect to the Trustee's claim seeking turnover of the Property as against Rudy, the Court ordered that the Trustee was entitled to final judgment in his favor, but further ordered that turnover "shall be subject to Rudy's homestead exemption in the Property and the Trustee's acquisition of an order authorizing a sale of the Property."[6] The Judgment that avoided the September 2011 transfer is now final and non-appealable. As a result of the Judgment, Rudy has only a possessory interest in the Property.

On September 8, 2014, Rudy commenced a separate voluntary Chapter 7 petition, and claimed a $175,000 homestead exemption in the Property. Sam S. Leslie was appointed as the Trustee in Rudy's case. On December 8, 2015, Trustee Goodrich moved to disallow Rudy's homestead exemption (the "Disallowance Motion"). On February 19, 2015, the Court denied the Trustee's Disallowance Motion, finding that Rudy was entitled to an exemption of $175,000 based on his possessory interest in the Property.[7] The Trustee appealed the Court's denial of the Disallowance Motion to the District Court, which affirmed the Bankruptcy Court's decision. The Trustee appealed the District Court's affirmance to the Ninth Circuit. On April 17, 2017, the Ninth Circuit issued a Memorandum of Decision affirming the District Court's ruling. However, the Ninth Circuit clarified that although Rudy was entitled to a homestead exemption, that exemption was limited to his possessory interest in the Property:

> In order to qualify as a "homestead" under the automatic homestead exemption, certain residency requirements must be satisfied. Cal. Civ. Proc. Code § 704.710(c). If the residency requirements are satisfied, a judgment debtor can claim a homestead exemption in the interest he or she has in the property, "regardless of whether the judgment debtor's interest is a fee, leasehold, or lesser interest." Cal. Civ. Proc. Code § 704.820 Law Revision Commission Comments to 1982 Addition; *see also Elliott v. Weil (In re Elliott)*, 523 B.R. 188, 196 (B.A.P. 9th Cir. 2014) ("[T]he [California] automatic homestead exemption applies to any interest in the property if the debtor satisfies the continuous residency requirement.").
>
> The parties do not dispute that [Rudy] Fuentes has satisfied these residency requirements. In addition, [Rudy] Fuentes holds a possessory interest in the Property, which is an interest in real property that California law recognizes. *See, e.g.*, Cal. Rev. & Tax. Code § 107; Cal. Code Regs. tit. 18, § 20. Because [Rudy] Fuentes has satisfied the residency requirements, he can claim a homestead exemption in his bankruptcy for the possessory interest that he holds in the Property. However, this possessory interest can be sold by his creditors unless "no bid is received at a sale of [the possessory interest] pursuant to a court order for sale that exceeds the amount of the homestead exemption

---

[5] *See* Order: (1) Granting Motion for Summary Judgment Against Defendant Rudy E. Fuentes on Third, Sixth, and Tenth Claims for Relief in Trustee's Complaint, (2) Dismissing with Prejudice First, Second, Fourth, Fifth, Seventh, Eighth and Ninth Claims for Relief Against Defendant Rudy E. Fuentes in Trustee's Complaint; and (3) Dismissing Without Prejudice Tenth Claim for Relief Against Defendant Aida Fuentes in Trustee's Complaint (the "Judgment") [Doc. No. 61, Adv. No. 2:14-ap-01159-ER].

[6] Judgment at ¶3.

[7] *See* Order Denying Motion of David Goodrich for Order: (1) Disallowing Homestead Exemption in Fraudulently Transferred Real Property; or (2) in the Alternative Extending Time to Object to Debtor's Homestead Exemption [Doc. No. 56, Case No. 2:14-bk-27148-ER].

> plus any additional amount necessary to satisfy all liens and encumbrances on the property . . . ." Cal. Civ. Proc. Code § 704.800(a).
>    Further, [Rudy] Fuentes's possessory interest is still subject to all other provisions of California and federal law, which may "extinguish[] . . . [his] equitable possessory interests in the real property at issue." *See Eden Place, LLC v. Perl (In re Perl)*, 811 F.3d 1120, 1128 (9th Cir. 2016).

Memorandum of Decision ("Ninth Circuit Memorandum") at 3–5 [Doc. No. 22, Case No. 15-56618].
   In a footnote, the Ninth Circuit explained that "[Rudy] Fuentes is not guaranteed to receive any particular amount of money if any other interest (besides his possessory interest) in the Property is sold." *Id.* at 5. The Ninth Circuit made no statements with respect to the amount of money, if any, that Rudy was entitled to receive on account of his homestead exemption.
   Aida claimed a homestead exemption in the Property in the amount of $175,000. On June 23, 2017, the Court granted the Trustee's motion to disallow Aida's homestead exemption. The Court found that, pursuant to §522(g), Aida was not entitled to a homestead exemption:

> Section 522(g) provides:
>> Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
>>> (1)   (A) such transfer was not a voluntary transfer of such property by the debtor; and
>>>       (B) the debtor did not conceal such property; or
>>> (2) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.
>
> "Section 522(g) … limits the ability of a debtor to claim an exemption where the trustee has recovered property for the benefit of the estate." *Hitt v. Glass (In re Glass)*, 164 B.R. 759, 761 (9th Cir. BAP 1994). Its purpose "is to prevent a debtor from claiming an exemption in recovered property which was transferred in a manner giving rise to the trustee's avoiding powers, where the transfer was voluntary or where the transfer or property interest was concealed." *Id.* at 764.
>    There is no dispute that Aida voluntarily transferred the Property to Rudy prior to the petition. The Trustee obtained a judgment avoiding the transfer as fraudulent and recovering the Property. Because Aida voluntarily transferred property that the Trustee recovered, she is not entitled to a homestead exemption under §522(g). It is not necessary for the Court to find that Aida concealed the transfer; the mere fact that she voluntarily transferred property that the Trustee subsequently recovered is sufficient to defeat her right to a homestead exemption.

Final Ruling Granting Trustee's Motions to Disallow Aida's Homestead Exemption and to Employ a Real Estate Broker to Market the Property [Doc. No. 54, Case No. 2:13-bk-11518-ER] at 7–8.

Over Aida's objection, the Court granted the Trustee's application to employ a real estate broker to market the Property. The Court rejected Aida's contention that there was no equity in the Property to be administered for the benefit of creditors:

> Aida's opposition … is premised upon the inaccurate assumption that Rudy is entitled to payment of his $175,000 homestead exemption from the proceeds of the Property's sale. Aida's opposition ignores the language of the Ninth Circuit's Memorandum of Decision affirming the allowance of Rudy's homestead exemption. The Ninth Circuit held that Rudy is entitled to a homestead exemption, but only to the extent of his possessory interest in the Property. The Ninth Circuit further noted that Rudy is not guaranteed to receive any money on account of his homestead exemption if an interest in the Property other than his possessory interest is sold.
>
> The Trustee is not seeking to sell Rudy's possessory interest in the Property. The Trustee will either sell the Property subject to Rudy's possessory interest, or will take action to extinguish Rudy's possessory interest prior to the sale. Rudy holds no other interest in the Property aside from his possessory interest. Rudy's homestead exemption cannot attach to the proceeds stemming from the sale of interests in the Property that he does not hold. Because Rudy's homestead exemption cannot attach to the sale proceeds, there is equity in the Property for distribution to unsecured creditors, and there is no merit to Aida's contention that the Trustee is pursuing the sale of the Property in bad faith.
>
> This result is compelled by the language of the statute and the decision of the Ninth Circuit. The statute makes clear that a debtor's homestead exemption is limited to the debtor's interest in the property. *See, e.g.*, Cal. Civ. Proc. Code §704.740 (providing that "the *interest* of a natural person in a dwelling may not sold under this division to enforce a money judgment except pursuant to a court order …"); *id.* at §704.820 (providing that where a judgment debtor holds less than a fee simple interest in the property, only "the *interest* of the judgment debtor in the dwelling and not the dwelling shall be sold," and further providing that where there is more than one judgment debtor, "each of the judgment debtors entitled to a homestead exemption is entitled to apply his or her exemption to his or her own *interest*").
>
> The Ninth Circuit's Memorandum further established that Rudy's homestead exemption applies only to his possessory interest in the Property. The court explained that Rudy "can claim a homestead exemption in his bankruptcy for the possessory interest that he holds in the Property." Memorandum at 4. The court further stated that Rudy "is not guaranteed to receive any particularly amount of money if any other interest (besides his possessory interest) in the Property is sold." *Id.* at 5.
>
> The proposition that a debtor's homestead exemption can apply only to the debtor's interest in property is corroborated by the logic of other cases interpreting California's homestead statute. For example, in *Schwaber v. Reed (In re Reed)*, 940 F.2d 1317, 1323 (9th Cir. 1991), the Ninth Circuit was confronted with a situation in which the debtor held only a one-half interest in property. For purposes of determining whether the debtor's homestead exemption could defeat the Trustee's sale of the property, the court compared the value of the exemption to the value of the debtor's one-half interest. The court did not use the value of the entire property to conduct the equity calculation. The court's approach is consistent with the principle that the homestead exemption applies only to the debtor's interest in the property. If the debtor's homestead exemption could

> apply to interests in the property that the debtor did not hold, the *Reed* court would have been required to perform the equity calculation using the value of the entire property, not just the value of the debtor's one-half interest. The limitation of a homestead exemption to the debtor's interest was also made clear in *Elliot v. Weil (In re Elliott)*, 523 B.R. 188, 196 (B.A.P. 9th Cir. 2014). In that case, the court said that the "homestead exemption applies to any *interest* in the property." *Id.* at 196 (emphasis altered).

*Id.* at 5–7.

On September 13, 2017, the Court conducted hearings on the Trustee's motion seeking to compel Aida to turnover the Property (the "Turnover Motion") and the Trustee's motion for an order authorizing the sale of the Property free and clear of liens and encumbrances (the "First Sale Motion"). The Court denied the Turnover Motion without prejudice, finding that because Aida, Rudy, and their children all lived at the Property, any turnover order issued by the Court with respect to Aida only would be impossible to enforce.[8] The Court denied the First Sale Motion without prejudice since the closing of the sale was contingent upon the Trustee's ability to deliver the Property to the buyers in vacant condition.[9]

In the Turnover Denial Order, the Court found that in light of the unenforceability of a turnover order issued only with respect to Aida, it was necessary for the possessory rights of both Aida and Rudy in the Property to be litigated simultaneously. The Court further held that the issues regarding Rudy's possessory interest and homestead exemption must be adjudicated before this Court—as opposed to being adjudicated before a state court by way of an unlawful detainer action—because those issues require interpretation of the Judgment avoiding the 2011 transfer of the Property and the application of bankruptcy law. On September 14, 2017, the Court issued an order reopening Rudy's bankruptcy case to permit such adjudication to occur.[10] On September 28, 2017, the Court denied the Trustee's motion for reconsideration of the Court's finding that it was necessary for the issues regarding Rudy's possessory interest and homestead exemption to be adjudicated before the Bankruptcy Court.[11]

On September 18, 2017, Rudy filed an "Adversary Complaint For: (1) Declaratory Judgment Re Value of Debtor's Possessory, Equitable and Homestead Interests in Real Property; (2) Valuation of Interests; and (3) Injunctive Relief" (the "Original Complaint") in his reopened bankruptcy case. The Trustee moved to dismiss the Original Complaint, for failure to state a claim, based on the fact that the Original Complaint named "David M. Goodrich" as a defendant in his individual capacity rather than in his capacity as the Chapter 7 Trustee of the estate of Aida Fuentes. The Court granted the Motion to Dismiss but gave Rudy leave to amend. The Court explained:

> Given the contentious nature of this litigation, the Court finds that the caption of the Complaint must be amended to make it absolutely clear that David M. Goodrich is being sued in his capacity as a Chapter 7 Trustee, not in his individual capacity. Upon reading the Complaint, it is clear that Rudy did not intend to sue David M. Goodrich in his

---

[8] *See* Order Denying Without Prejudice Chapter 7 Trustee's Turnover Motion (the "Turnover Denial Order") [Doc. No. 86, Case No. 2:13-bk-11518-ER].
[9] *See* Order Denying Without Prejudice Chapter 7 Trustee's Sale Motion [Doc. No. 85, Case No. 2:13-bk-11518-ER].
[10] *See* Order Reopening Case [Doc. No. 79, Case No. 2:14-bk-27148-ER].
[11] *See* Order Denying Chapter 7 Trustee's Motion for Reconsideration [Doc. No. 93, Case No. 2:13-bk-11518-ER].

> individual capacity; nonetheless, the Complaint's caption is misleading and therefore creates ambiguity.

Ruling Granting Motion to Dismiss with Leave to Amend [Doc. No. 17, Case No. 2:17-ap-01475-ER] at 7.

On November 21, 2017, Rudy filed the operative First Amended Complaint (the "Complaint"). The Complaint alleges that Rudy's possessory interest in the Property has a value of no less than $175,000; that Rudy holds an equitable interest in the Property as a result of community payments on the Property's mortgage; and that the Trustee's attempts to sell the Property without paying Rudy any amount on account of his homestead exemption constitute a taking of Rudy's property without just compensation. Based on these allegations, the Complaint seeks (1) a declaration that Rudy's possessory interest has a value of $175,000; (2) a declaration that Rudy holds an equitable interest in the Property by virtue of community payments on the Property's mortgage; (3) a declaration that any termination of Rudy's possessory and equitable interests in the Property must provide for payment of or adequate protection of those interests; and (4) an injunction preventing the Trustee from selling the Property without paying Rudy $175,000 on account of his homestead exemption.

### B. Summary of Papers Filed in Connection with the Trustee's Second Sale Motion

The Trustee seeks authorization to sell his right, title, and interest in the Property to Equity, free and clear of liens and encumbrances. *See generally* Second Sale Motion. The sale is subject to overbids. The sale is not contingent upon the delivery of the Property in a vacant condition and/or upon the extinguishment of the possessory interests of Aida, Rudy, or any other occupants. The Trustee is selling only his interest in the Property, not Rudy's possessory interest. The Trustee asserts that he is authorized to sell the Property upon the foregoing terms, without paying Rudy any amount on account of his homestead exemption, based upon the Ninth Circuit's determination that Rudy "is not guaranteed to receive any particular amount of money if any other interest (besides his possessory interest) in the Property is sold." Ninth Circuit Memorandum at p. 5, n. 1. The Trustee seeks a finding that Equity, or any qualified overbidder who prevails at the auction, is a good-faith purchaser entitled to the protections of §363(m).

Rudy opposes the Second Sale Motion and makes the following arguments in support of his opposition:

1) Pursuant to §363(e), Rudy's equitable interest in the Property cannot be sold absent adequate protection of that interest. Rudy holds an equitable interest in the Property because community funds were used to make mortgage payments. Until the value of Rudy's equitable interest has been determined through the pending adversary proceeding, the amount of adequate protection that Rudy must be provided on account of his equitable interest cannot be determined. Therefore, the Property cannot be sold until conclusion of the adversary proceeding.
2) The Property is being sold by quitclaim deed. A quitclaim deed contains no warranties of title and only operates to convey the seller's interest in the Property to the buyer. In this case, the Property is subject to (a) the final order granting turnover to the Trustee, but providing that turnover is subject to Rudy's allowed homestead exemption; (b) the final order in Rudy's case overruling the Trustee's objection to Rudy's $175,000 homestead exemption; (c) the order of the District Court affirming the Bankruptcy Court's allowance of Rudy's homestead exemption; (d) the Ninth

> Circuit's order affirming the District Court's order; and (e) any other order relating to the Property, including the order denying the Trustee's motion for reconsideration of the order reopening Rudy's bankruptcy case. Further, the purchaser would also take the Property subject to the pending adversary proceeding, meaning that the purchaser would be required to step into the Trustee's shoes and defend the adversary proceeding. This is another reason why the sale must be postponed until the adversary proceeding has been resolved.
> 3) In light of the fact that the Trustee was listed as a creditor in Rudy's case, and Rudy has obtained a discharge, the Trustee's attempt to sell the Property may violate the discharge injunction.

> The Trustee makes the following arguments in reply to Rudy's opposition:
> 1) It is not necessary for the sale to be postponed until resolution of the adversary proceeding. The adversary proceeding seeks to value Rudy's possessory and alleged equitable interests in the Property. Rudy's possessory interest, and his homestead exemption in such possessory interest, is not relevant because the sale to Equity is not contingent upon the extinguishment of Rudy's possessory interest. If the sale is approved, Rudy's claims in the adversary regarding his possessory interest will become moot. Rudy's claim that he holds an equitable interest in the Property based upon the alleged use of community funds to maintain the Property are without merit, for the reasons set forth in the Trustee's concurrent motion to dismiss the adversary proceeding.
> 2) The Trustee has demonstrated that the standards governing the sale of property in a bankruptcy proceeding have been satisfied, and Rudy has failed to refute that these standards have been met. That is, the Trustee has demonstrated that the purchase price is fair and reasonable and that the sale is in the best interests of creditors and the estate.

**C. Summary of Papers Filed in Connection with the Trustee's Motion to Dismiss Rudy's Claims for Valuation of His Alleged Equitable Interest in the Property**

The Trustee seeks dismissal, with prejudice, of Rudy's claims regarding an equitable interest in the Property based upon the alleged use of community funds to maintain the Property from and after June 2006 (the "Equitable Claim"). The Trustee makes the following arguments in support of the Motion to Dismiss:
1) The "form of title" presumption establishes that the Property is Aida's separate property and that Rudy holds no equitable interest therein. Under the "form of title" presumption, the description in a deed as to how title is held presumptively reflects the actual ownership status of the property. *Fadel v. DCB United LLC (In re Fadel)*, 492 B.R. 1, 11 (9th Cir. BAP 2013). The "form of title" presumption is codified at California Evidence Code §662, which provides: "The owner of the legal title to property is presumed to be owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof." Here, during the time that Rudy alleges that community funds were used to pay the Property's mortgage, the title provided that the Property was Aida's separate property.
2) Even if the "form of title" presumption does not control, the Equitable Claim is based upon reimbursement for the alleged use of community funds. Reimbursement is a

monetary right which arises only between spouses upon dissolution of the marriage. *Fadel*, 492 B.R. at 7. Here, there has been no dissolution.

3) Any equitable interest Rudy may have held in the Property dissipated as a result of the doctrine of merger when Aida conveyed all her right, title, and interest in the Property to Rudy as his sole and separate property by means of the deed recorded on September 12, 2011. Under the doctrine of merger, when the person holding a dominant tenement and a servient tenement are the same, all of the lesser property interests are merged into the fee simple interest.

4) In In re Marriage of Moore, 28 Cal.3d 366 (1980), the California Supreme Court held that where community funds are used to make payments on separate property, the community acquires an interest in the separate property to the extent of the payments. Therefore, even if Rudy did acquire an equitable interest in the Property based on the use of community funds to make the mortgage payments, any such equitable interest would be community property. As community property of Aida's estate, that equitable interest would belong to the Trustee pursuant to §541(a)(2). Because the equitable interest belongs to the Trustee, Rudy's attempt to obtain possession of that interest by way of the Complaint violates the automatic stay in Aida's case.

5) If Rudy's equitable interest were not property of Aida's estate, that interest would be property of Rudy's estate and would belong to the Trustee of Rudy's estate. Consequently, only the Trustee of Rudy's estate would have standing to pursue claims relating to the alleged equitable interest.

6) The Complaint exceeds the scope of the Turnover Denial Order, which stated that the Court would enter an order reopening Rudy's case for the limited purpose of adjudicating only issues regarding Rudy's possessory interest and homestead exemption. To the extent that the Complaint seeks relief exceeding the scope of the Turnover Denial Order, the Court lacks subject matter jurisdiction.

Rudy makes the following arguments in opposition to the Motion to Dismiss:

1) Civil Rule 12(g)(2) bars a party from raising arguments in a motion to dismiss that were available to the party but omitted from an earlier motion. The Trustee moved to dismiss the Original Complaint, which is identical to the operative First Amended Complaint, except that the caption was amended to make it absolutely clear that David M. Goodrich was being sued in his capacity as the Trustee for the estate of Aida Fuentes, not in his individual capacity. There is no reason why the arguments raised in this second motion to dismiss could have not been raised in the initial motion to dismiss.

2) The motion should be denied on the merits. First, Rudy's equitable interest in the Property is not property of his estate. Because Rudy's case was closed after having been fully administered, the equitable interest was abandoned to him pursuant to §554(c). The abandonment was not revoked upon the reopening of the case. Second, there is no merit to the Trustee's contention that the Complaint violates the automatic stay in Aida's case. The Complaint seeks to establish the value of Rudy's possessory and equitable interests in the Property. Nothing in the prayer for relief seeks to obtain possession of property of Aida's estate, as Rudy is already in lawful possession of the Property.

The Trustee makes the following arguments in reply to Rudy's opposition:

1) Civil Rule 12(g)(2) does not warrant denial of the Motion to Dismiss. First, Rule 12(g)(2) does not apply because the Original Complaint named David Goodrich in his individual capacity and not in his capacity as the Trustee of Aida's estate. Second, even if Rule 12(g)(2) did apply, courts within the Ninth Circuit liberally construe the rule and consider arguments raised in violation thereof if such consideration is in the interests of judicial economy. *See Pepper v. Apple, Inc. (In re Apple Iphone Antitrust Litig.)*, 846 F.3d 313, 319 (9th Cir. 2017) ("Although Rule 12(g) technically prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion ... courts faced with a successive motion often exercise their discretion to consider the new arguments in the interests of judicial economy."). Judicial economy supports consideration of the Motion to Dismiss. If the claims related to Rudy's alleged equitable interest in the Property are dismissed, the only remaining issues pertain to Rudy's possessory interest and homestead exemption in the Property. Those issues will be resolved if the Court approves the Second Sale Motion.

2) Rudy fails to address most of the Trustee's important substantive arguments in support of dismissal. There is no dispute that Rudy's alleged equitable interest in the Property is community property and is therefore property of Aida's estate. By prosecuting the Complaint, Rudy is attempting to obtain possession of property of Aida's estate in violation of the automatic stay.

## II. Findings and Conclusions

All findings set forth in Section I.A., "Prior Proceedings," above, are adopted as the findings of the Court. For the reasons set forth below, the Trustee's Motion to Dismiss Rudy's claims pertaining to his alleged equitable interest in the Property is granted. The Court finds that the sale of the Property need not be postponed until the conclusion of the adversary proceeding.

*A. The Trustee's Motion to Dismiss is Granted*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). To state a plausible claim for relief, a complaint must satisfy two working principles:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitations of the elements of a cause of action, supported by mere conclusory statements, do not suffice…. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* (citing Civil Rule 8(a)(2)).[12]

---

[12] Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101–1103; all "LBR" references are to the Local

    Although the pleading standard Civil Rule 8 announces "does not require 'detailed factual allegations,' … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation…. A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

    Civil Rule 12(g)(2) provides:
> Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Rule 12(h)(2) provides that the defense of failure to state a claim may be raised (1) in any pleading, (2) by way of a motion for judgment on the pleadings, or (3) at trial.

    Courts within the Ninth Circuit consider motions to dismiss made in violation of Rule 12(g)(2) if such consideration furthers judicial economy:
> Although Rule 12(g) technically prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion ... courts faced with a successive motion often exercise their discretion to consider the new arguments in the interests of judicial economy.

*Pepper v. Apple, Inc. (In re Apple Iphone Antitrust Litig.)*, 846 F.3d 313, 319 (9th Cir. 2017)

    The reason for this flexible construction of Rule 12(g)(2) is as follows:
> Rule 12(g) is designed to avoid repetitive motion practice, delay, and ambush tactics. If the Court were to evade the merits of Defendants' ... defenses here, Defendants would be required to file answers within 14 days of this Order. They would presumably assert [the same defenses] in those answers. Defendants would then file Rule 12(c) motions, the parties would repeat the briefing they have already undertaken, and the Court would have to address the same questions in several months. That is not the intended effect of Rule 12(g), and the result would be in contradiction of Rule 1's mandate [to construe the Civil Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding"].

    The Court rejects Rudy's contention that the Motion to Dismiss is barred by Rule 12(g)(2). First, the defenses now raised by the Trustee were not available to him in the context of his motion to dismiss the Original Complaint, in view of the Original Complaint's misleading caption which created ambiguity as to whether the Trustee was being sued in his individual capacity or in his capacity as the Trustee of Aida's estate. It was not unreasonable for the Trustee to be concerned about personal liability given the contentious nature of this litigation. Aida (who is represented by the same counsel as Rudy) has previously argued that the Trustee should be required to appear and show cause why he should not be removed pursuant to §324. Removal under §324 is an extraordinary remedy that disqualifies a Trustee from serving as the Trustee in all pending cases under the Bankruptcy Code.

    Second, denial of the Motion to Dismiss on Rule 12(g)(2) grounds would not be in the interests of judicial efficiency. Since the Motion to Dismiss is brought under Rule 12(b)(6), the Trustee could raise identical arguments by way of a motion for judgment on the pleadings or at trial. Refusing to consider the Trustee's arguments at this juncture would result only in delay, in contravention of Rule 1. *See Apple Iphone Antitrust Litig.*, 846 F.3d at 319.

---

Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, Rules 1001-1–9075-1; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§101–1532.

Turning to the merits, the Court finds that the Complaint's allegations regarding Rudy's equitable interest in the Property fail to state a claim upon which relief can be granted. In California, where community funds are used to make payments on separate property, the community acquires an interest in the separate property proportionate to such payments. *See In re Marriage of Moore*, 28 Cal.3d 366 (1980). Consequently, any equitable interest that Rudy may have acquired in the Property is community property.[13] As community property of Aida's estate, that equitable interest belongs to the Trustee pursuant to §541(a)(2). Rudy's attempt to obtain possession of this estate property is void as a violation of the automatic stay. *See* §362(a)(3) (staying "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate"); *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569 (9th Cir. 1992) (holding that actions in violation of the automatic stay are void, not voidable).[14] The Trustee is entitled to dismissal of the void claims brought in violation of the stay. Because Rudy cannot plead facts showing that an equitable interest acquired through community payments is not property of Aida's estate, the dismissal is with prejudice. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (holding that the Court may dismiss a complaint without leave to amend where any proposed amendment would be futile).

At the hearing, Rudy asserted that if any equitable interest he holds in the Property is community property and therefore property of Aida's estate, such an equitable interest must be property of Rudy's estate as well. Rudy did not explain how this argument was relevant to the Motion to Dismiss. As best as the Court can determine, the argument is an attempt to demonstrate that Rudy's efforts to obtain possession of the alleged equitable interest do not violate the stay in Aida's case. Rudy's theory is apparently that he is merely attempting to obtain possession of property that was property of his own bankruptcy estate and that has subsequently been abandoned to him pursuant to §554(c), and that such actions do not violate the stay in Aida's case.

If this was the point that Rudy was attempting to make, the Court finds that the argument lacks merit. Even if Rudy held an equitable interest in the Property, and even if such equitable interest was property of Rudy's estate that has now been abandoned to him,[15] it does not follow that Rudy's attempts to obtain possession of such property do not violate the stay in Aida's case. As set forth above, the Property is property of Aida's estate. Rudy's assertion that he holds an equitable interest in the Property and that the Trustee may not administer the Property pending determination of the value of that alleged equitable interest is an act to obtain possession of and control over property of Aida's estate.

*B. The Second Sale Motion is Granted, and the Court Sua Sponte Dismisses the Complaint's Remaining Claims for Relief*

Rudy's primary opposition to the Second Sale Motion is that any sale must await resolution of the adversary proceeding. As discussed above, the Complaint has been dismissed with

---

[13] The Court makes no determination as to whether Rudy did in fact acquire an equitable interest in the Property. As discussed below, the Court finds that even if Rudy did acquire an equitable interest, such interest would be property of Aida's estate and would belong to the Trustee.

[14] Rudy asserts in conclusory fashion that the Complaint's allegations do not violate the stay, but he cites no authority refuting *Marriage of Moore*.

[15] The Court makes no determination as to whether any equitable interest Rudy may or may not have held was property of his estate, and makes no determination as to whether such an interest was abandoned to Rudy pursuant to §554(c).

prejudice to the extent that it asserts that Rudy holds an equitable interest in the Property by virtue of community payments.

The Complaint's remaining claims seek relief based upon Rudy's possessory interest in the Property. The Ninth Circuit has held that Rudy "is not guaranteed to receive any particular amount of money if any other interest (besides his possessory interest) in the Property is sold." Ninth Circuit Memorandum at 5. Here, the Trustee is not selling Rudy's possessory interest in the Property, and the sale does not require the Trustee to deliver the Property to the successful purchaser in vacant condition. Consistent with the statements made by the Ninth Circuit, this Court has previously ruled that Rudy is not entitled to receive any payment on account of his homestead exemption if the Trustee does not sell Rudy's possessory interest in the Property. The Court's decision overruling Aida's opposition to the Trustee's motion to employ a real estate broker to market the Property applies with equal force here:

> The Trustee is not seeking to sell Rudy's possessory interest in the Property…. Rudy holds no other interest in the Property aside from his possessory interest. Rudy's homestead exemption cannot attach to the proceeds stemming from the sale of interests in the Property that he does not hold. Because Rudy's homestead exemption cannot attach to the sale proceeds, there is equity in the Property for distribution to unsecured creditors, and there is no merit to Aida's contention that the Trustee is pursuing the sale of the Property in bad faith.
> 
> This result is compelled by the language of the statute and the decision of the Ninth Circuit. The statute makes clear that a debtor's homestead exemption is limited to the debtor's interest in the property. *See, e.g.*, Cal. Civ. Proc. Code §704.740 (providing that "the *interest* of a natural person in a dwelling may not sold under this division to enforce a money judgment except pursuant to a court order …"); *id.* at §704.820 (providing that where a judgment debtor holds less than a fee simple interest in the property, only "the *interest* of the judgment debtor in the dwelling and not the dwelling shall be sold," and further providing that where there is more than one judgment debtor, "each of the judgment debtors entitled to a homestead exemption is entitled to apply his or her exemption to his or her own *interest*").
> 
> The Ninth Circuit's Memorandum further established that Rudy's homestead exemption applies only to his possessory interest in the Property….
> 
> The proposition that a debtor's homestead exemption can apply only to the debtor's interest in property is corroborated by the logic of other cases interpreting California's homestead statute. For example, in *Schwaber v. Reed (In re Reed)*, 940 F.2d 1317, 1323 (9th Cir. 1991), the Ninth Circuit was confronted with a situation in which the debtor held only a one-half interest in property. For purposes of determining whether the debtor's homestead exemption could defeat the Trustee's sale of the property, the court compared the value of the exemption to the value of the debtor's one-half interest. The court did not use the value of the entire property to conduct the equity calculation. The court's approach is consistent with the principle that the homestead exemption applies only to the debtor's interest in the property. If the debtor's homestead exemption could apply to interests in the property that the debtor did not hold, the *Reed* court would have been required to perform the equity calculation using the value of the entire property, not just the value of the debtor's one-half interest. The limitation of a homestead exemption to the debtor's interest was also made clear in *Elliot v. Weil (In re Elliott)*, 523 B.R. 188,

196 (B.A.P. 9th Cir. 2014). In that case, the court said that the "homestead exemption applies to any *interest* in the property." *Id.* at 196 (emphasis altered).

Final Ruling Granting Trustee's Motions to Disallow Aida's Homestead Exemption and to Employ a Real Estate Broker to Market the Property [Doc. No. 54, Case No. 2:13-bk-11518-ER] at 7–8.

There is no merit to Rudy's contention that the successful purchaser takes the Property subject to the pending litigation regarding Rudy's possessory interest. The terms of the purchase agreement provide that the purchaser is acquiring only the Trustee's interest in the Property and is not acquiring Rudy's possessory interest. It defies logic to suggest that the purchase of the Trustee's interest could somehow be subject to claims regarding an interest in the Property that is not being sold.

Contrary to Rudy's position, Equity, the successful purchaser, is not required to step into the Trustee's shoes and defend against Rudy's claims regarding his possessory interest. As a result of the sale, Rudy's claims regarding his possessory interest can no longer have any conceivable effect upon the administration of Rudy's bankruptcy case. Consequently, the Court lacks jurisdiction over those claims, and will *sua sponte* dismiss the claims.

The Bankruptcy Court has jurisdiction over "all cases under title 11." 28 U.S.C. §1334(a). "Generally, in the bankruptcy context, the word 'case' is a term of art which refers to 'that which is commenced by the filing of a petition; it is the "whole ball of wax," the chapter 7, 9, 11, 12 or 13 case.'" *Blevins Elec., Inc. v. First Am. Nat'l Bank (In re Blevins Elec., Inc.)*, 185 B.R. 250, 253 (Bankr. E.D. Tenn. 1995).

The Bankruptcy Court also has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §1334(b). The three types of jurisdiction conferred under 28 U.S.C. §1334(b) are known as "arising under," "arising in," and "related to" jurisdiction. "Arising under" jurisdiction exists if "the cause of action is created by title 11." *Menk v. Lapaglia (In re Menk)*, 241 B.R. 896, 909 (B.A.P. 9th Cir. 1999). "Arising in" jurisdiction applies to "those administrative proceedings that, while not based on any right created by title 11, nevertheless have no existence outside bankruptcy." *Id.* "Related to" jurisdiction exists if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy…. An action is related to bankruptcy if the action could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Fietz v. Great Western Savings (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988) (internal citations omitted).

As a result of the completion of the sale, the Court lacks "related to" jurisdiction. It was against the backdrop of the First Sale Motion that the Court determined that it was necessary that Rudy's bankruptcy case be reopened so that the Court could adjudicate issues regarding Rudy's possessory interest and his homestead exemption in that possessory interest. Adjudication of those issues was necessary because the First Sale Motion required the Trustee to deliver the Property to the purchasers in vacant condition, free of Rudy's possessory interest.

The Second Sale Motion completely changes the landscape. The Second Sale Motion does not require the Trustee to deliver the Property to the purchaser free of Rudy's possessory interest. As discussed previously, the Ninth Circuit has found that Rudy is not entitled to payment on account of his homestead exemption in his possessory interest unless that possessory interest is

sold to pay his creditors.[16] The Ninth Circuit's finding follows from a straightforward application of California law, which governs the treatment of Rudy's homestead exemption because California has opted out of the federal exemption scheme. *See* Cal. Code Civ. Proc. §703.130; *Elliott v. Weil (In re Elliott)*, 523 B.R. 188, 192 (B.A.P. 9th Cir. 2014).The automatic homestead exemption at issue here "is not an absolute right to retain the homestead itself," but is instead "merely a debtor's right to retain a certain sum of money when the court orders sale of a homestead in order to enforce a monetary judgment." *Schwaber v. Reed (In re Reed)*, 940 F.2d 1317, 1321 (9th Cir. 1991); *see also* Cal. Civ. Proc. Code §704.800(a) (providing that a homestead can be sold if a "bid is received at a sale of [the] homestead pursuant to a court order for sale that exceeds the amount of the homestead exemption plus any additional amount necessary to satisfy all liens and encumbrances on the property"). Here, Rudy holds only a possessory interest in the Property, and his homestead exemption applies only to that possessory interest. Rudy's right to be paid on account of his homestead exemption in the possessory interest is not triggered because the possessory interest is not being sold.

Because the Trustee is not seeking to sell Rudy's possessory interest and is not seeking to terminate that interest, the Court lacks "related to" jurisdiction to determine the value, if any, of Rudy's possessory interest or his homestead exemption in that possessory interest. Rudy has received a discharge and his estate has been fully administered. Issues pertaining to Rudy's possessory interest no longer affect the handling or administration of Rudy's bankruptcy case in any way.

There is no other jurisdictional basis for the Court to consider Rudy's claims regarding his possessory interest or his homestead exemption therein. The Court lacks "arising under" jurisdiction because Rudy's claims arise under state law, not under title 11.[17] The Court lacks "arising in" jurisdiction because the claims are not an administrative proceeding of the type that has no existence outside of bankruptcy.

Rudy argues that the Court has jurisdiction over the remaining claims because adjudication of those claims will require interpretation of orders issued by this Court, the District Court, and the Ninth Circuit. Rudy is mistaken. State courts are often called upon to adjudicate issues requiring interpretation of orders issued by federal courts; the fact that such interpretation may be required does not automatically give rise to federal jurisdiction.

Civil Rule 12(h)(3) provides: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Based upon its determination that it lacks jurisdiction, the Court *sua sponte* dismisses the Complaint's remaining claims. Rudy's argument that it is improper for the Court to dismiss the remaining claims *sua sponte* lacks merit. "Subject-matter limitations on federal jurisdiction serve institutional interests. They keep the federal courts within the bounds the Constitution and Congress have prescribed. Accordingly, subject-matter delineations must be policed by the courts *on their own initiative* even at the highest level." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (emphasis added).

---

[16] *See* Ninth Circuit Memorandum at p. 5, n. 1.

[17] Where a debtor claims a homestead exemption and the Trustee seeks to sell the property subject to that exemption or objects to the homestead exemption, such issues are considered by the Bankruptcy Court. For the reasons discussed above, Rudy's claims regarding his homestead exemption do not arise in this context and therefore are not subject to federal jurisdiction. The Trustee is not seeking to sell Rudy's possessory interest (which is the property subject to his homestead exemption), and the Trustee's objections to the allowability of Rudy's homestead exemption have already been adjudicated. California state law defines the scope of Rudy's possessory interest as well as the treatment of his homestead exemption in that possessory interest. These issues fall within the jurisdiction of the state court.

There is no merit to Rudy's assertion that the sale violates the discharge injunction entered in Rudy's bankruptcy case. The Trustee is not selling any interest of Rudy in the Property. The sale is not an attempt by the Trustee to collect a debt against Rudy.

The Trustee is authorized to execute any and all documents that may be necessary to consummate the sale of the Property. The Trustee is authorized to pay from the sale proceeds any undisputed liens and the costs of sale. The sale is free and clear of liens and encumbrances, with such liens and encumbrances to attach to the sales proceeds. Having reviewed the declaration of Joe Timko, the president of Equity, the Court founds that Equity is a good-faith purchaser entitled to the protections of §363(m). There is no merit to Rudy's contention that Equity should not be afforded the protections of §363(m) simply because the sale is by way of a quitclaim deed.

### III. Conclusion

Based upon the foregoing, the Second Sale Motion is GRANTED, the Motion to Dismiss is GRANTED, and the Court *sua sponte* dismissing the Complaint's remaining claims. The Court will enter an order dismissing the Complaint. The Trustee shall submit a proposed order on the Second Sale Motion within seven days of the issuance of this Memorandum of Decision. The Trustee must serve that proposed order upon Rudy's counsel pursuant to LBR 9021-1(b)(3)(A). Any issues regarding the form of the order will be determined in the manner provided by LBR 9021-1(b)(3)(B).

###

Date: February 2, 2018

Ernest M. Robles
United States Bankruptcy Judge